Sabrina Damast (CA SBN #305710 and NY SBN #5005251)
Amy Lenhert (CA Bar #227717)
Rocio La Rosa (CA Bar #314831)
Law Office of Sabrina Damast, Inc.
510 West 6th Street, Suite 330
Los Angeles, CA 90014
Telephone: (323) 475-8716
Emails: sabrina@sabrinadamast.com
amy@sabrinadamast.com
rocio@sabrinadamast.com

Counsel for Petitioner
Vaichik Aghajani

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VAICHIK AGHAJANI,<br>A075-742-457,<br><br>Petitioner,<br>v.<br><br>TODD BLANCHE, in his official capacity as Attorney General,<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of the Department of Homeland Security,<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>WARDEN, Adelanto Detention Facility,<br><br>ANDRES QUINONES, in his official capacity as ICE Field Office Director,<br><br>Respondents. | Case No. 5:26-cv-05620<br><br>**VERIFIED PETITION FOR HABEAS CORPUS AND COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br>IMMIGRATION HABEAS CASE |

1. Vaichik Aghajani (Petitioner), by and through his undersigned counsel, hereby files this petition for a writ of habeas corpus challenging the unlawful revocation of his release on an order of supervision (OSUP) and his continued indefinite detention without belief that his removal from the United States is reasonably foreseeable.
2. Petitioner is a citizen of Iran. He arrived in the United States on a tourist visa on December 23, 1999. *See* Exhibit B. He obtained an extension of status and was authorized to remain until December 22, 2000. In or around November 2000, he submitted an affirmative application for asylum. He was subsequently referred for removal proceedings with a Notice to Appear dated April 10, 2001, where he was charged with removability for overstaying his tourist visa. *See* Exhibit B.
3. An immigration judge denied his applications for asylum and related relief on April 9, 2003, and ordered him removed to Iran. *See* Exhibit C. The Board of Immigration Appeals dismissed his appeal on May 27, 2004. *See* Exhibit D. The Ninth Circuit dismissed his petition for review on June 22, 2005, and the mandate issued on August 16, 2005. *See* Exhibit E.
4. In January 2003, Petitioner was married and his wife became a naturalized U.S. citizen in 2005. He also has one U.S. citizen child.

5. After the Ninth Circuit dismissed his petition in 2005, Petitioner remained out of immigration custody with no specific reporting requirements. In or around 2010, Petitioner was detained by ICE officers at his home and held for 90 days. He was subsequently released on OSUP on July 30, 2010. *See* Exhibit A.

6. On information and belief, Petitioner was released from custody in 2010, after ICE was unable to remove him to Iran.

7. Petitioner has no criminal history and was complying with his ICE reporting requirements for the past 16 years without issue. On September 9, 2026, Petitioner appeared at an ICE check-in and was detained.

8. Petitioner was provided with a Notice of Revocation of Release on the day he was detained. *See* Exhibit A. It solely states that release has been revoked under 8 C.F.R. § 241.4 because the purpose of release has been served. The Notice is signed by Supervisory Detention and Deportation Officer (SDDO) A. Gonzalez. In addition, Petitioner has not yet been provided with any informal interview or asked if there was any reason he should not be detained or deported, nor was he told what circumstances had changed in his case such as would justify revocation of his release. *See id.*

9. On information and belief, ICE had no particularized evidence that Petitioner could be deported to Iran or any country at the time they detained him and

continue to have no particularized evidence that Petitioner can be removed at this time. Further, Petitioner has never violated the terms of his OSUP.

10. Petitioner has not received an individualized hearing before a neutral decisionmaker to assess whether his recent detention was warranted due to danger or flight risk.

**PARTIES**

11. Petitioner Vaichik Aghajani is a citizen of Iran, who is currently in the custody of ICE at Adelanto Detention Center, in Adelanto, California.

12. Respondent Todd Blanche, the Attorney General, is the highest-ranking official within the Department of Justice (DOJ). Respondent Blanche has responsibility for the administration and enforcement of the immigration laws pursuant to 8 U.S.C. § 1103. As the Immigration and Nationality Act (INA) has not been amended to reflect the designation of the Secretary of the Department of Homeland Security (DHS) as the administrator and enforcer of immigration laws, Respondent Blanche is sued in his official capacity to the extent that 8 U.S.C. § 1102 gives him authority over immigration law.

13. Respondent Markwayne Mullin, the Secretary of the DHS, is the highest-ranking official within the DHS. Respondent Mullin, by and through his agency for the DHS, is responsible for the implementation of the INA, and

for ensuring compliance with applicable federal law. He is also responsible for the detention of non-citizens by ICE. Respondent Mullin is sued in his official capacity as an agent of the government of the United States.

14. The DHS is the agency responsible for detaining non-citizens, including Petitioner.

15. The warden of the Adelanto Detention Center is sued in his role as Petitioner's immediate custodian.

16. Respondent Andres Quinones is the Field Office Director of the Los Angeles office of Immigration and Customs Enforcement. He oversees the custody of all Immigration and Customs Enforcement detainees in both Los Angeles and Adelanto. Respondent Quinones is sued in his official capacity as an agent of the government of the United States.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, general federal question jurisdiction; habeas jurisdiction pursuant to 28 U.S.C. § 2241 et seq.; Art I., § 9, Cl. 2 of the United States Constitution (the Suspension Clause); and the common law. This action arises under the Due Process Clause of the Fifth Amendment of the U.S. Constitution and the INA. This Court may grant relief under the habeas corpus statutes, 28 U.S.C. § 2241 et. seq., the Declaratory Judgment Act, 28 U.S.C. § 2001 et

seq., and the All-Writs Act, 28 U.S.C. § 1651.

18. Federal district courts have jurisdiction to hear habeas claims by noncitizens challenging the lawfulness or constitutionality of DHS conduct. Federal courts are not stripped of jurisdiction under 8 U.S.C. § 1252. *See e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

19. Venue is proper pursuant to 28 U.S.C. § 1391(e) because Respondents are agencies of the United States or officers or employees thereof acting in their official capacity or under color of legal authority; Petitioner is in the custody of the Los Angeles Field Office of Immigration and Customs Enforcement at the Adelanto Detention Facility, which is in the jurisdiction of the Central District of California; and there is no real property involved in this action.

## **LEGAL BACKGROUND**

20. 8 U.S.C. § 1231(a) governs the detention of individuals who have been ordered removed. The statute directs ICE to detain such individuals for 90 days while carrying out a removal order. *See* 8 U.S.C. § 1231(a)(2). This 90-day removal period begins when the removal order becomes final. Absent an applicable exception, if ICE cannot remove a person within the 90-day removal period, they are released from custody subject to supervision. 8 U.S.C. § 1231(a)(3).

21. Although 8 U.S.C. § 1231(a)(6) permits detention beyond the normal 90-day removal period, even these exceptions do not authorize indefinite detention. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (limiting ICE's detention authority to a period "reasonably necessary" to carry out removal and deeming detention impermissible when removal is not "reasonably foreseeable").

22. The regulations permit release of a non-citizen subject to a removal order after the 90-day removal period has elapsed if ICE determines that the non-citizen "would not pose a danger to the public or a risk of flight, without regard to the likelihood of the [non-citizen's] removal in the reasonably foreseeable future." 8 C.F.R. § 241.13(b)(1). These released individuals are typically subject to an OSUP, as Petitioner was prior to his re-detention. *See* 8 C.F.R. § 241.4(j); 8 C.F.R. § 241.13(h).

23. Under the regulations, the Executive Associate Commissioner is authorized to revoke a non-citizen's release if the purposes of release have served."

24. Courts have found that re-detention premised on effectuating an order of removal where no travel document has been obtained or requested *prior to* the re-detention does not constitute a valid change in circumstances. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025) ("The written notice of revocation falsely stated that circumstances had changed because his case was "under current review by the Government of Vietnam for the

issuance of a travel document.". . . But it was only weeks later—the day of this Court's TRO hearing—that a deportation officer was assigned to Petitioner's case and asked him to finish the necessary paperwork.").

25. Finally, the revocation must comply with the procedural due process requirements of 8 C.F.R. § 241.13(h)(4)(i)(2), (3) that require Respondents to provide a non-citizen with notice of the specific reasons for the revocation, provide the non-citizen with an informal interview, and provide the non-citizen with the opportunity to submit any evidence or information that he believes shows there is no significant likelihood he will be removed in the reasonably foreseeable future.

26. Failure to provide the notice of the reasons for the revocation or failure to provide an informal interview violates the detainee's due process rights and requires immediate release on OSUP. *See Ceesay v. Kurzdorfer*, 781 F.Supp.3d 137, 166 (W.D.N.Y. May 2, 2025) (collecting cases, concluding that the failure to provide the informal interview violated the detainee's due process rights, and concluding that the detainee was entitled to immediate release); *see also K.E.O. v. Woosley*, 2025 WL 2553394, *5-7 (W.D. Ky. Sept. 4, 2025) (ordering release for failure to provide informal interview); *Santamaria Orellana*, 2025 WL 244087 at *7 (failure to provide interview violates due process); *Delkash v. Noem*, 2025 WL 2683988, *5-7 (C.D. Cal.

Aug. 28, 2025) (noting requirement for notice and informal interview and granting immediate release).

27. Moreover, legally sufficient notice of the reasons for the revocation of release must be provided *before* re-detaining an individual on an OSUP in order to comply with due process. *Zhu*, 798 F.Supp.3d at 415 (noting that the regulations and Due Process Clause require that the process required for revoking a release must happen before a non-citizen is re-detained and ordering immediate release).

28. Failure to provide a detainee with meaningful notice of the reasons for the revocation deprives him of the opportunity to be heard on why he should remain at liberty. *See e.g.*, *Perez-Escobar v. Mariz*, 792 F. Supp.3d 224 (D. Mass. July 24, 2025) (finding that a Notice of Revocation that stated that there is a significant likelihood of removal in the reasonably foreseeable future, that the purpose of release had been served, and that it was appropriate to enforce the removal order "does not identify any specific changed circumstances" and fails to give the petitioner "meaningful notice of the basis for its revocation" and ordering the petitioner's immediate release).

29. Moreover, only certain officials have the authority to revoke an OSUP - namely, the Executive Associate Commission of the former Immigration and Naturalization Service, or, possibly, the current Executive Associate Director of ICE. *See e.g.*, *Rombot v. Souza*, 296 F.Supp.3d 383, 385 (D. Mass. Nov.

8, 2017) (noting that the regulation, on its face, refers to titles in force under the former INS, and thus, it is not clear an ICE Field Office Director can revoke an order of supervision to enforce a removal order); *see also Ceesay*, 781 F.Supp.3d at 162 (noting that the authority of the Executive Associate Commissioner of INS was transferred to the Executive Associate Director of ICE and finding that an Assistant Field Office Director is not the equivalent of the Executive Associate Director); *Santamaria Orellana v. Baker*, 2025 WL 244087, *6 (D. Md. Aug. 25, 2025) (only the Executive Associate Commissioner or a district director can revoke release); *Zhu v. Genalo*, --- F.Supp.3d ----, 2025 WL 242352, * 8 (S.D.N.Y. Aug. 26, 2025) (same); *Santamaria Orellana v. Baker*, 2025 WL 2841886, *5-6 (D. Md. Oct. 7, 2025) (reiterating that the requirement that a specific senior official sign a notice of revocation is not merely a housekeeping matter and again ordering Santamaria Orellana's release after his re-detention by immigration officials).

**FIRST CAUSE OF ACTION**

**UNLAWFUL REVOCATION OF RELEASE**

30. Petitioner re-alleges and incorporates each allegation contained in paragraphs 1-31.

31. Petitioner was previously detained by ICE and released. If he has complied with the conditions of his OSUP, Respondents have the authority to revoke his release only if there is a significant likelihood that they can remove him in the reasonably foreseeable future. *See* 8 C.F.R. § 241.13(i)(2).

32. Respondents revoked Petitioner's release without evidence that he could be deported to any country.

33. Respondents' actions are arbitrary, capricious, an abuse of discretion, and contrary to law. 5 U.S.C. § 706(a)(2)(A). Petitioner is entitled to immediate release on an OSUP.

## <u>SECOND CAUSE OF ACTION</u>

## VIOLATION OF PROCEDURES FOR REVOCATION OF RELEASE

34. Petitioner re-alleges and incorporates each allegation contained in paragraphs 1-31.

35. The governing regulations require Respondents to notify Petitioner of the reason for his re-detention. 8 C.F.R. § 241.13(i)(3). Respondents have not complied with this obligation, as a general statement that "the purpose of the release has been fulfilled" is wholly inadequate. Further, they have not yet provided him with an informal interview at which he can respond to the purported reasons from revocation. *Cf. id.* As such, Petitioner is entitled to immediate release on OSUP until ICE can provide the minimal process required by the regulation.

36. Because a Supervisory Detention and Deportation Officer, rather than the Executive Associate Commissioner of the former Immigration and Naturalization Service, or the current Executive Associate Director of ICE, has signed a Notice of Revocation, that individual lacks authority to so revoke Petitioner's release.

## <u>THIRD CAUSE OF ACTION</u>

## UNLAWFUL DETENTION WITHOUT INDIVIDUALIZED DETERMINATIONS OF DANGER OR FLIGHT RISK PRIOR TO DETENTION

37. Petitioner re-alleges and incorporates each allegation contained in paragraphs 1-31.

38. Detention violates Section 1231 and the Due Process Clause of the U.S. Constitution unless it is reasonably related to the government's purpose of preventing flight and protecting the community. *Zadvydas*, 533 U.S. at 690-91.

39. Before being re-detained, Petitioner lived in the community for over sixteen years on OSUP. Petitioner received no process prior to his detention to determine if detaining him was warranted. Further, Petitioner has strong family ties in the United States, including his U.S. citizen wife, daughter, and two brothers. He was self-employed as a truck driver.

40. Petitioner is entitled to an individualized determination by impartial adjudicators as to whether detention is justified based on danger or flight risk.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully requests that this Court grant the following relief:

1. Assume jurisdiction over this matter;
2. Declare that Respondents have violated Petitioner's rights;
3. Order Respondents to immediately release Petitioner on an OSUP;
4. Order Respondents to release Petitioner from detention because they lack any individualized evidence that removal of Petitioner will occur in the reasonably foreseeable future;
5. Order Respondents to return any confiscated property to him, including, but not limited to, any photo identification and/or employment authorization card;
6. Enjoin Respondents from revoking Petitioner's release unless they have individualized evidence that his removal is reasonably foreseeable;
7. Enjoin Respondents from revoking Petitioner's release without providing him a determination by an impartial adjudicator that his detention is justified based on danger or flight risk, which cannot be sufficiently addressed by alternative conditions of release and/or supervision, at which hearing

Respondents will bear the burden of proof of demonstrating that Petitioner is a flight risk or a danger to the community;

8. Enjoin Respondents from re-detaining Petitioner without first notifying him of the reasons for the revocation of his release, providing him with an opportunity to rebut those reasons, and providing him with a prompt interview as required by regulation;
9. Award Petitioner his costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any further basis justified under law;
10. Grant such further relief as the Court deems just and proper.

**RESPECTFULLY SUBMITTED this 23rd day of September, 2026.**

**/s/ Sabrina Damast**
Sabrina Damast, CA Bar # 305710
Law Office of Sabrina Damast, Inc.
510 West 6th Street, Suite 330
Los Angeles, CA 90014
(O) (323) 475-8716
(E) sabrina@sabrinadamast.com

**ATTORNEY FOR PETITIONER**

**TABLE OF EXHIBITS**

**Exhibit A:** Declaration of Petitioner and Counsel

**Exhibit B:** Notice to Appear dated April 10, 2001

**Exhibit C:** April 9, 2003 Removal Order

**Exhibit D:** May 27, 2004 BIA Dismissal

**Exhibit E:** Ninth Circuit Docket Case No. 04-73099